21 F.3d 1122
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Affie THOMAS, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 93-3269.
 United States Court of Appeals,
Tenth Circuit.
 April 18, 1994.
 
 1
 Before BRORBY and EBEL, Circuit Judges, and KANE,** District Judge.
 
 ORDER AND JUDGMENT[1]
 
 2
 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed.R.App.P. 34(a); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 3
 Claimant Affie Thomas appeals the decision of the district court affirming the decision of the Secretary of Health and Human Services (Secretary) to deny her applications for disability insurance benefits and supplemental security income (SSI) benefits. On appeal, claimant alleges that the Administrative Law Judge (ALJ) applied the wrong law in evaluating her allegations of disabling pain, failed to develop the record concerning her alleged disability prior to 1981, and incorrectly determined that she could return to her past relevant work as a receptionist despite her inability to understand, remember, or carry out complex instructions.
 
 
 4
 Because claimant was last insured for benefits on December 31, 1980, she had to establish that she became disabled on or before that date to obtain disability insurance benefits. See Potter v. Secretary of Health & Human Servs., 905 F.2d 1346, 1347 (10th Cir.1990). To obtain SSI benefits, claimant had only to show that she was currently disabled; claimant could not, however, obtain benefits for any time before the date on which she filed her application for benefits. See 20 C.F.R. 416.335.
 
 
 5
 Claimant filed her respective applications on October 29, 1989, alleging she was disabled due to rheumatoid arthritis. In her application for disability insurance benefits, claimant alleged that she had been disabled since February 15, 1977. In her SSI application, however, claimant alleged that she had been disabled since February 15, 1989. The ALJ construed claimant's alleged onset date to be February 15, 1977, for both claims.
 
 
 6
 The ALJ held a de novo hearing on September 27, 1990, in Kansas City, Missouri.[2] Both claimant, who was not represented by counsel, and a vocational expert testified at the hearing. Thereafter, the ALJ denied claimant's applications for benefits in an opinion issued Apri 14,1991.
 
 
 7
 The ALJ concluded that claimant was not disabled for purposes of disability insurance benefits because claimant's subjective allegations of disabling pain resulting from her arthritis were not sufficient to establish a disability on or before December 31, 1980, in light of the total absence of any medical records pertaining to that period. As to the SSI benefits, the ALJ concluded that claimant was not currently disabled and could return to her past relevant work as a receptionist.
 
 
 8
 Specifically, the ALJ found the following. The medical records did not reflect any treatment for arthritic pain before 1985, and subsequent treatment for the condition was only sporadic. Furthermore, the records did not reveal any clinical diagnosis of rheumatoid arthritis, and claimant did not exhibit any of the clinical signs associated with rheumatoid arthritis--such as swollen joints, limited range of motion, muscle weakness, or bone deformities--with the exception of a set of tests in November 1987 that revealed an elevated sed rate. The same tests, however, also reflected a negative rheumatoid arthritis factor.
 
 
 9
 Dr. Simpson, a physician at University of Kansas Medical Center (KUMC) who saw claimant in 1987 and who reviewed the records from claimant's treatment at KUMC in 1980, reported that she saw nothing to suggest claimant had rheumatoid arthritis either in 1987 or in 1980. Dr. Simpson noted that, while certain of claimant's asserted symptoms suggested fibromyalgia syndrome, other symptoms contradicted such a diagnosis. She concluded that claimant's complaints of total body tenderness were more suggestive of psychogenic pain. Dr. Chamberlain, an internist who examined claimant in December 1990, also found no evidence of active inflammatory arthritis and questioned any diagnosis of rheumatoid arthritis based on his examination. Dr. Chamberlain concluded that claimant suffered from multiple arthralgias, or joint pains. See Dorland's Illustrated Medical Dictionary 122 (26th ed.1985). Although one of claimant's treating physicians did suggest that claimant had rheumatoid arthritis in late 1989, that assessment was not supported by objective medical findings.
 
 
 10
 Based on Dr. Simpson's comment about possible psychogenic pain, the ALJ requested that claimant be examined by Dr. Day, a psychiatrist. Dr. Day examined claimant in November 1990 and determined that claimant suffered an adult adjustment reaction with depressed mood secondary to her physical problems that did not significantly affect her ability to work, except for her ability to understand, remember, and carry out complex job instructions.
 
 
 11
 Although claimant was prescribed various pain and anti-inflammatory medications, no doctor put any restrictions on her physical activities, and claimant's testimony indicated that she was able to do minimal household chores despite her alleged pain. Furthermore, claimant alleged that she read often and did not indicate that her pain interfered with her ability to concentrate.
 
 
 12
 Based on the foregoing, the ALJ concluded that claimant was not disabled. When the Appeals Council denied review, the ALJ's decision became the final decision of the Secretary. The district court affirmed the Secretary's decision, and this appeal followed.
 
 
 13
 "We review the Secretary's decision to determine whether [her] findings are supported by substantial evidence in the record and whether [she] applied the correct legal standards." Emory v. Sullivan, 936 F.2d 1092, 1093 (10th Cir.1991). In reviewing the Secretary's decision, we may not reweigh the evidence or substitute our judgment for that of the Secretary. Brown v. Bowen, 801 F.2d 361, 362 (10th Cir.1986).
 
 
 14
 On appeal, claimant contends that the ALJ applied the wrong legal standard in evaluating her subjective allegations of pain. Because the hearing took place in Missouri, the ALJ mistakenly cited the Eighth Circuit case of Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984), rather than the Tenth Circuit case of Luna v. Bowen, 834 F.2d 161 (10th Cir.1987), as authority for the proper legal standards to apply when evaluating claimant's allegations of pain. (The ALJ also cited Social Security Ruling 88-13 as authority.) Although claimant raises the ALJ's mistaken citation on appeal, she does not explain how the analysis adopted by the Eighth Circuit in Polaski differs from the analysis we adopted in Luna, and our study of the two cases reveals no difference. Therefore, even though the ALJ cited to the wrong circuit's authority, he did not apply the wrong legal standards when evaluating claimant's complaints of disabling pain.
 
 
 15
 Next, claimant argues that the ALJ failed to develop the record and then relied on that failure to deny claimant's application for disability insurance benefits. Claimant contends that she specifically testified that Dr. Alexander treated her before 1980 and that she was treated at KUMC before that date, yet the ALJ failed to obtain any records of claimant's treatment before 1984.
 
 
 16
 Claimant's counsel[3] obtained copies of the records of Dr.Alexander's treatment of claimant beginning in 1980, as well as copies of claimant's medical records from KUMC for the years 1975 and 1976. Counsel submitted the new evidence to the district court. The record does not reflect, and the parties do not inform us, whether counsel accompanied the submission with a request that the district court remand the proceedings to the Secretary to consider the additional evidence.
 
 
 17
 Pursuant to 42 U.S.C. 405(g), "[t]he court may ... at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." Even if the ALJ's failure to obtain the records constituted good cause, an issue we need not decide, claimant also would have had to show that "the new evidence would have changed the Secretary's decision had it been before [her]," before a remand to the Secretary would have been appropriate. Hargis v. Sullivan, 945 F.2d 1482, 1493 (10th Cir.1991).
 
 
 18
 The district court reviewed the additional records submitted by claimant and determined that "they do not establish an impairment." Memorandum and Order at 5. Specifically, the district court stated that
 
 
 19
 [t]he only records that make any reference to her arthritis complaint indicate that Thomas made subjective complaints of hand, elbow and shoulder stiffness but that x-rays of her hands, wrist and elbows were normal and that there was no lab or x-ray evidence for rheumatoid arthritis. Thus, the ALJ's finding that Thomas was not disabled prior to December 31, 1980, is supported by the records.
 
 
 20
 Id.
 
 
 21
 Contrary to the district court's findings, claimant contends that the additional records "corroborate that plaintiff had suffered from these problems [rheumatoid arthritis, arthralgias and myalgias[4]] before 12-31-80; her date last insured." Br. of Appellant at 11. Unfortunately, claimant did not provide us with a copy of the additional records that the district court reviewed. Therefore, we cannot determine whether the district court erred in concluding that the additional records would not have changed the Secretary's decision had they been before her at the time she denied claimant's application for disability insurance benefits.[5]
 
 
 22
 Finally, we consider claimant's contention that the ALJ erred in concluding that claimant could return to her past relevant work as a receptionist despite the opinions of Dr. Day and Dr. Blum, a psychologist who completed a Psychiatric Review Technique form, that claimant could not understand, remember, or carry out complex instructions. Claimant bases her argument on the Dictionary of Occupational Titles[6] (DOT), which provides that the occupation of receptionist requires a reasoning development of level three. See DOT at 207 (237.367-038 RECEPTIONIST). A person with a level three reasoning development is one who can "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and "[d]eal with problems involving several concrete variables in or from standardized situations." Id. at 1011.
 
 
 23
 Claimant bears the burden of proving she cannot return to her past relevant work. Andrade v. Secretary of Health & Human Servs., 985 F.2d 1045, 1050 (10th Cir.1993). Claimant, however, cites no authority--and we have found none--providing that an inability to understand, remember, and carry out complex instructions is incompatible with a reasoning development of level three. Moreover, to prove that she cannot return to her past relevant work, claimant must show that she can perform neither "[t]he actual functional demands and job duties of a particular past relevant job" nor "[t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." Social Security Ruling 82-61; Andrade, 985 F.2d at 1050-51. Therefore, if claimant's receptionist duties as she actually performed them did not require her to be able to understand, remember, and carry out complex instructions, then claimant could still perform her past relevant work despite this limitation.
 
 
 24
 In describing her former duties as a receptionist, claimant said she mostly answered telephones and also was "at the lunch counter" and "ran some copies on the machine." R. at 43. As described, claimant's duties do not appear to require the ability to understand, remember, and carry out complex instructions. Furthermore, when asked to categorize claimant's past relevant work, the vocational expert testified that claimant's receptionist position was sedentary and unskilled as claimant described it. "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. 404.1568(a). Thus, the record does not support claimant's contention that her inability to understand, remember and carry out complex instructions prevented her from performing her past relevant work as a receptionist.
 
 
 25
 The judgment of the United States District Court for the District of Kansas is AFFIRMED.
 
 
 
 **
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Claimant, however, is a resident of Kansas City, Kansas
 
 
 [3]
 Although not represented by counsel before the agency, claimant was represented by counsel before the district court and is represented by the same counsel on appeal
 
 
 [4]
 A myalgia is a muscle pain. Dorland's at 856
 
 
 [5]
 We also note that claimant has indicated that her condition has gotten progressively worse over time. Therefore, in light of our determination, discussed below, that the Secretary did not err in denying claimant SSI benefits based on her condition after October 29, 1989, we also must conclude that the Secretary did not err in denying claimant disability insurance benefits based on her condition on or before December 30, 1980
 6 U.S. Dep't of Labor, Dictionary of Occupational Titles (4th ed. Revised 1991).