Sam A. ANDRADE, Plaintiff–Appellant,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

No. 92–2017.

United States Court of Appeals, Tenth Circuit.

Feb. 11, 1993.

Gary J. Martone, Albuquerque, NM, for plaintiff-appellant.

Don J. Svet, U.S. Atty., Gayla Fuller, Chief Counsel, Region IV, and Christopher

Carillo, Asst. Regional Counsel, Office of the General Counsel, U.S. Dept. of Health and Human Services, Dallas, TX, for defendant-appellee.

Before BALDOCK and SETH, Circuit Judges, and BABCOCK,* District Judge.

BABCOCK, District Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed.R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Appellant Sam A. Andrade (claimant) appeals from an order of the district court affirming the Secretary of Health and Human Services' decision that claimant is not entitled to disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, or to supplemental security income (SSI) benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381a. Claimant argues that substantial evidence does not support the Secretary's determination that his mental impairment did not limit his ability to work. Claimant also argues that the Secretary either incorrectly categorized his past relevant work or applied an incorrect legal standard in determining that he could return to his past relevant work. We disagree with claimant's second argument, but agree with his first. Therefore, we affirm in part, reverse in part, and remand with directions.

Claimant was a self-employed general contractor in New Mexico from August 1974, until May 1987. Claimant's duties, however, were not limited to those typically performed by a general contractor: because he owned a small business, he also functioned as a plumber and manual laborer at times. He claims that physical and mental limitations, including epilepsy, a heart condition, and problems with his right arm, rendered him disabled as of July, 1987. He also claims to be disabled from a mental impairment.

Claimant's applications for benefits were denied both initially and upon reconsideration at the administrative level. The applications and documentary evidence were then reviewed de novo by an administrative law judge (ALJ). After conducting a hearing, the ALJ determined that claimant was not disabled because he retained the capacity to perform his former job as that job is performed in the national economy. The Appeals Council denied claimant's request for review. The ALJ's decision, therefore, became the final decision of the Secretary. The district court upheld the ALJ's decision.

Our review of the Secretary's decision is limited to "whether his findings are supported by substantial evidence in the record and whether he applied the correct legal standards." *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir.1991). The " '[f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.' " *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir.1984) (quoting *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983)). Additionally, we must reverse if the Secretary's findings are not supported by substantial evidence. *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir.1988). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* (quoting *Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir.1983) (further citation omitted)).

To prove a disability, a claimant must establish a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 1382c(a)(3)(A) & 423(d)(1)(A). Social security regulations specify that a five-step sequential analysis must be used to evaluate a claim for disability benefits. 20 C.F.R. §§ 404.1520 & 416.920; *see also Williams* 844 F.2d at 750–52 (providing explanation of the five steps). At issue in this appeal is step four, which requires examination of whether physical or mental impairments prevent a claimant from continuing past relevant work.

---

* Honorable Lewis T. Babcock, District Judge, United States District Court for the District of Colorado, sitting by designation.

### I.  Claimant's Alleged Mental Disability

Claimant argues that the ALJ's decision regarding the extent of his depression is unsupported by the record.  Specifically, claimant maintains that his severe depression substantially limits his residual functional capacity, and that the ALJ's conclusion otherwise is not supported by substantial evidence.  Residual functional capacity represents the capacity of the claimant to perform work, despite mental or physical impairments.  20 C.F.R. §§ 404.1545(a) & 416.945(a) (residual functional capacity assesses "what you can still do despite your limitations").  The ALJ evaluated claimant's residual functional capacity as part of the fourth step of the disability analysis. *See id.* §§ 404.1520(e) & 416.920(e).

The evidence of claimant's depression in this case consisted of his testimony at the hearing before the ALJ, along with letters and hand-written treatment notes, which are mostly illegible, from claimant's physician.   Claimant complained of depression and suicidal thoughts.  He also admitted to crying spells, feelings of worthlessness, and withdrawing from people when he felt bad.  Claimant testified that he had been treated on a weekly basis for depression by Dr. Jaramillo since August 1988 (four months before the hearing).  Administrative R. at 81.  Claimant stated that he saw Dr. Jaramillo for an individual session once a week, and for a group session twice a week.  *Id.*  In addition, Dr. Jaramillo gave claimant a shot every week to, in claimant's words, "help me mentally with my chemical imbalance." *Id.* at 80.  Claimant added that Dr. Jaramillo said he would need the shots "for a year or so." *Id.*  Regarding the effectiveness of Dr. Jaramillo's treatment, claimant explained that the treatments helped a lot, but shortly after the shots and group sessions he would start to feel bad again. *Id.* at 83.

At the hearing, claimant's attorney submitted a letter from Dr. Jaramillo which described claimant as "totally mentally disabled," and suggested claimant follow "an intense psychochemotherapeutic treatment program ... for at least 3–6 months." *Id.* at 239.  Sometime after the hearing, the attorney submitted a letter from Dr. Jar-amillo, written in December 1988, which assessed claimant as having "major depression with incongruent thoughts." *Id.* at 261.  The letter also stated that claimant complained that he was overwhelmed and not sleeping, and that he felt "enormous stress and conflicts related to his legal issues of his old business." *Id.*  The record contains a final letter from Dr. Jaramillo, written July 12, 1989, that states "[claimant] appears to continue to suffer a mental disability.  His last visit occurred on February 24, 1989, and he was still in distress.  [Claimant] has not continued with therapy due to a financial hardship." *Id.* at 271.

The ALJ found that it was unclear from the record whether claimant's depression was expected to continue for twelve months.  Although the ALJ recognized that Dr. Jaramillo diagnosed claimant as totally mentally disabled, the ALJ found that there was "no other reference ... in [Dr. Jaramillo's] reports regarding claimant's inability to perform work.  In fact, Dr. Jaramillo reported in November and December 1988 that the claimant was feeling overwhelmed due to certain legal problems." *Id.* at 44.  The ALJ concluded that "[i]n view of this evidence, an inference can be drawn that claimant's mental problems are largely, if not all, situational in nature, leading to a conclusion that any symptomatology will subside once his legal problems do so." *Id.*

■  We conclude that the ALJ did not give proper consideration to claimant's alleged mental impairment.  When a record "contains evidence of a mental impairment that allegedly prevented claimant from working, the Secretary [is] required to follow the procedure for evaluating the potential mental impairment set forth in his regulations and to document the procedure accordingly. *See* 20 C.F.R. § 404.1520a." *Hill v. Sullivan,* 924 F.2d 972, 975 (10th Cir.1991); *see also* 20 C.F.R. § 416.920a (for parallel regulations applicable to claims for SSI benefits).  And, of course, the Secretary must also comply with all applicable procedures mandated by the statute. *See, e.g.,* 42 U.S.C. § 421(a)(2) (disability determinations must be made in

accordance with pertinent statutory provisions and applicable regulations of the Secretary). From the record it appears that the ALJ complied with the social security regulations, but not with the statutory requirement to make every reasonable effort to ensure that a qualified psychologist or psychiatrist completes the residual functional capacity assessment. *See* 42 U.S.C. § 421(h).

> Section 421(h) of Title 42 provides that [a]n initial determination ... that an individual is not under a disability, in any case where there is evidence which indicates the existence of a mental impairment, shall be made only if the Secretary has made every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

This provision applies to claims for SSI benefits and for disability insurance benefits. *Hill*, 924 F.2d at 974. Thus, when the record contains evidence of a mental impairment, the Secretary cannot determine that the claimant is not under a disability without first making every reasonable effort to ensure that a qualified psychiatrist or psychologist has completed the medical portion of the case review and any applicable residual functional capacity assessment.

■ In this case, when claimant first applied for benefits, he did not allege a mental impairment. On November 16, 1988, about one month before his hearing with the ALJ, claimant filed forms describing his recent medical treatment and medications. These forms indicated that Dr. Jaramillo had been treating claimant with an intense psychochemotherapeutic treatment program since August of 1988. At the hearing on December 20, 1988, claimant explained his severe depression and treatment program to the ALJ. At that time, claimant also submitted a letter from Dr. Jaramillo, as well as more forms which indicated he was still seeing Dr. Jaramillo. Sometime after the hearing, claimant's attorney submitted additional letters and treatment notes from Dr. Jaramillo. Because the record contained no evidence of claimant's mental impairment until shortly before the hearing with the ALJ, none of the disability determinations prior to the ALJ's determination considered whether claimant's mental impairment rendered him disabled. The ALJ, thus, was in the position of making the initial determination of whether claimant was disabled in light of his alleged mental impairment.

Social security regulations specify that a special procedure must be followed when evaluating a mental impairment. *See* 20 C.F.R. §§ 404.1520a & 416.920a. Part of this procedure entails recording pertinent information on a standard document. *Id.* §§ 404.1520a(d) & 416.920a(d). When a claimant's severe mental impairment does not meet a listed mental impairment, the standard document must include an assessment of the residual functional capacity. *Id.* §§ 404.1520a(c)(3) & 416.920a(c)(3). The document must be completed at the "initial, reconsideration, administrative law judge hearing, and Appeals Council levels." *Id.* §§ 404.1520a(d) & 416.920a(d). At the initial and reconsideration levels, the document must be completed and signed by a medical consultant. *Id.* §§ 404.1520a(d)(1) & 416.920a(d)(1). The ALJ, however, may complete the document without the assistance of a medical advisor. *Id.* §§ 404.-1520a(d)(1)(i) & 416.920a(d)(1)(i). When the issue of a mental impairment arises for the first time at the ALJ hearing level, the ALJ may choose to remand the case to the State agency for completion of the document and for a new disability determination. *Id.* §§ 404.1520a(d)(1)(iii) & 416.920a(d)(1)(iii).

Here, there is no evidence in the record that a qualified psychiatrist or psychologist assessed claimant's residual functional capacity. Likewise, there is no evidence that the ALJ made any effort to ensure that a qualified psychiatrist or psychologist completed the appropriate reports and residual functional capacity assessment. Instead, as allowed by the regulations, the ALJ appears to have completed the standard document, including the residual functional capacity assessment, without the assistance of a medical consultant.

In a previous case, this court found "no error in the fact that the case review and [residual functional capacity assessment] were completed by the ALJ without the assistance of a mental health professional." *Bernal v. Bowen,* 851 F.2d 297, 302–03 (10th Cir.1988). Our conclusion in *Bernal* was based on three considerations. First, we found no absolute duty under 42 U.S.C. § 421(h) for the Secretary or the ALJ to have a psychologist or psychiatrist complete the medical portion of the case review and the residual functional capacity assessment. *Bernal,* 851 F.2d at 302. Second, the record lacked any evidence seriously challenging the ALJ's assessment of Mr. Bernal's residual functional capacity or the ALJ's conclusion regarding the severity of Mr. Bernal's mental impairment. *Id.* And, third, "Mr. Bernal was not prejudiced by the ALJ's actions" because "the ALJ's decision was amply supported by the medical reports and the record." *Id.*

In this case, however, we cannot conclude that substantial evidence supports the ALJ's decision regarding the extent of claimant's mental impairment. The ALJ found that there was no reference in the record to claimant's inability to perform work, other than the diagnosis in Dr. Jaramillo's letter of September 1988 that claimant is "totally mentally disabled." In another section of his decision, however, the ALJ recognized that Dr. Jaramillo's notes of November 22, 1988, described claimant as unable to work. Additionally, Dr. Jaramillo's notes of November 3, 1988, make some reference to a limitation on claimant's ability to work. However, as with the majority of Dr. Jaramillo's handwritten notes, this reference of November 3 is not completely legible. We cannot conclude from these illegible treatment notes, or from any part of the record, that substantial evidence supports the ALJ's finding that the record does not refer to claimant's inability to perform work. Neither can we conclude that substantial evidence supports the finding that claimant's mental problems are "largely, if not all, situational in nature." Although Dr. Jaramillo reported that claimant complained he felt overwhelmed from legal problems related to his business, nothing in the record shows that claimant's legal problems were the primary cause of his depression.

In *Bernal,* we did not "delineate the boundaries of the duties imposed under section 421(h). . . ." *Bernal,* 851 F.2d at 302. And, we do not, by this decision, attempt to define the phrase "every reasonable effort." We hold only that, based on the particular circumstances of this case, the ALJ abused the discretion afforded to him by the regulations, 20 C.F.R. §§ 404.-1520a & 416.920a, by assessing claimant's residual functional capacity without making any effort to obtain the assistance of a mental health professional. Accordingly, we remand this case for proper consideration of claimant's alleged mental impairment.

## II. Challenge to Social Security Ruling 82–61

■ A claimant capable of performing past relevant work is not disabled within the meaning of the Social Security Act. *See* 20 C.F.R. §§ 404.1520(e) & 416.920(e). The claimant bears the burden of proving his or her inability to perform past relevant work. *See Ray v. Bowen,* 865 F.2d 222, 224 (10th Cir.1989).

In this case, to determine whether claimant could perform his past relevant work, the ALJ applied the policy of the Social Security Administration, set forth in Social Security Ruling 82–61 (S.S.R. 82–61). That ruling defines past relevant work as the claimant's ability to perform either "1. [t]he actual functional demands and job duties of a particular past relevant job; or 2. [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." S.S.R. 82–61.

■ At the hearing, claimant provided the following information about his previous job as a self-employed general contractor. He testified that the exertional requirements of the job were very heavy. He explained that in addition to performing the usual duties of a general contractor, he helped perform the construction as well. In claimant's words, he did "everything, climbing and everything to do with the

construction from the bottom up." Administrative R. at 73. Claimant stated that most of the time he served as his own foreman. When he was busy building more than one house, he hired someone to help him. Claimant reiterated that most of the time he "did it all." *Id.* at 85.

The ALJ found that "[a]lthough the claimant may have performed the actual labor in his past work, he also performed essentially all of the duties" of a general contractor as that job is generally performed. *Id.* at 46. Noting that the *Dictionary of Occupational Titles* describes the job of general contractor as generally requiring only light work, the ALJ concluded that claimant retained the capacity to perform the job of a general contractor as that job is generally performed in the national economy.

Claimant argues that S.S.R. 82–61 does not authorize the ALJ to consider only the lighter duties of his past job; rather, when considering whether claimant could perform his job as it is performed in the national economy, the ALJ must categorize claimant's occupation in a way that reflects all significant aspects of claimant's particular past job—particularly that he performed carpentry and plumbing in addition to the usual duties of a general contractor. Alternatively, he argues that S.S.R. 82–61 is altogether incorrect and should not be followed.

▮▮▮ We reject claimant's alternative argument that S.S.R. 82–61 should not be followed. As claimant points out, social security rulings do not carry the force and effect of law. *See Walker v. Secretary of Health & Human Servs.,* 943 F.2d 1257, 1259 (10th Cir.1991). They are entitled to deference, however, because "they constitute Social Security Administration interpretations of its own regulations and the statute which it administers." *Id.* at 1259–60. We defer to social security rulings unless "they are plainly erroneous or inconsistent with the [Social Security] Act." *Id.* at 1260. Claimant fails to establish that S.S.R. 82–61 is either plainly erroneous or inconsistent with the Social Security Act.

This court has previously held that a claimant could return to her past relevant work, even though her former job was no longer available. *Jozefowicz v. Heckler,* 811 F.2d 1352, 1356 (10th Cir.1987). We looked to whether the claimant could "still do the type of job she did in the past." *Id.* (noting "a claimant's past work is the 'type' of work previously performed.") (citing *Tillery v. Schweiker,* 713 F.2d 601, 602 (10th Cir.1983)).

Several other circuits have concluded that the phrase past relevant work includes a claimant's particular past relevant job, as well as the *type* of work claimant performed in the past, as that work is generally performed in the national economy. *See Martin v. Sullivan,* 901 F.2d 650, 653 (8th Cir.1990) (following the test stated in S.S.R. 82–61 and noting that the First, Second, Fourth, Sixth, Seventh, Ninth, and Eleventh Circuits have all rejected the argument that "a claimant who cannot perform a particular past relevant job cannot perform his past relevant work"); *see also Villa v. Heckler,* 797 F.2d 794, 798 (9th Cir.1986) (claimant must prove inability to return to former type of job, not just to specific prior job); *DeLoatche v. Heckler,* 715 F.2d 148, 151 (4th Cir.1983) (same); *Orlando v. Heckler,* 776 F.2d 209, 215–16 (7th Cir.1985) (adopting S.S.R. 82–61). We find no basis upon which to reject S.S.R. 82–61's interpretation of the phrase past relevant work. Therefore, claimant bears the burden of proving his inability to return to his particular former job and to his former occupation as that occupation is generally performed throughout the national economy.

▮▮▮ The only remaining issue is whether the ALJ correctly categorized claimant's occupation as a general contractor, as that position is defined in the *Dictionary of Occupational Titles.* The ALJ may rely on the *Dictionary*'s job description for claimant's job category as "presumptively applicable to a claimant's prior work." *Villa,* 797 F.2d at 798; *accord DeLoatche,* 715 F.2d at 151; *see also* 20 C.F.R. § 404.-1566(d)(1) (authorizes administrative notice of reliable job information found in the *Dictionary of Occupational Titles* ). However, a claimant "may overcome the

presumption that the *Dictionary*'s entry for a given job title applies to him by demonstrating that the duties in his particular line of work were not those envisaged by the drafters of the category." *Villa*, 797 F.2d at 798.

■ Claimant maintains that his occupational category must reflect the actual demands—including, plumbing and carpentry—of his past job. Claimant's burden, however, is to demonstrate he cannot return to his former type of work, and not just to his previous job. S.S.R. 82–61. Therefore, it is not enough to show that plumbing and carpentry were part of claimant's particular job: claimant must show that these demands are among the job duties of his type of job as that job is generally performed. Thus, claimant must show that "the duties of his prior job were sufficiently distinct from the duties of a [general contractor] as described in the *Dictionary* to constitute a different line of work." *Villa*, 797 F.2d at 798. We see no evidence that claimant made this showing. We find that the record supports the ALJ's conclusion that claimant was primarily a general contractor, even though his particular job involved some actual labor.

The judgment of the United States District Court for the District of New Mexico is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further consideration of claimant's alleged mental impairment, in accordance with this opinion. Claimant's capacity to return to his previous occupation should also be reevaluated on remand, if claimant's alleged mental impairment is found to limit his residual functional capacity.